BEFORE THE THIRD DIVISION, JUNE 18, 1947

**No. 51789.**—L. A. Importing House *v.* United States, protest 105437–K (Los Angeles).

CLINE, Judge; EKWALL, J., concurring in the result: This case involves a protest against the collector's exaction of storage charges on certain merchandise held at the appraiser's stores. When the case was originally before us, we sustained the protest and held that the exaction of storage charges by the collector was illegal (16 Cust. Ct. 1, C. D. 974.) Thereafter, a motion for a rehearing was granted and additional testimony was taken at Los Angeles on July 10, 1946.

Storage charges had been exacted because of importer's failure to pay certain additional duties and the collector's consequent refusal to deliver the goods. The Government called John C. Townsend, deputy collector in charge of the liquidating division at Los Angeles. He testified that the collector had demanded supplemental duties in this case because the consular invoice showed that the merchandise was invoiced in F. R. B. dollars; that the entered value was the appraised value; that he could not tell when the demand for supplemental duties was made; that the merchandise was appraised on November 9, 1940; that the storage charges accrued as a result of the importer's failure to pay the supplemental estimated duties; that the supplemental duties were held in abeyance pending a decision on the appeal to reappraisement and were canceled on liquidation of the entry; that the liquidation was on the basis of the Tientsin yuan dollar which was quoted at .05755 dollars; that the F. R. B. dollar was quoted at 13 cents.

The commercial invoice herein is made out in Mexican dollars; and the entry is in yuan dollars. The merchandise was appraised as entered, but apparently the collector believed that F. R. B. dollars instead of yuan dollars should have been used. He therefore demanded additional duties from the importer to cover the difference. The Government now contends that this was not an appraisement by the collector but a conversion of currency. It is the duty of the appraiser to express the value of the merchandise in the currency of the country of exportation (article 776, Customs Regulations of 1937) and it is the duty of the collector to convert that valuation into United States currency "for the purpose of the assessment and collection of duties upon merchandise imported into the United States" (sec. 522, Tariff Act of 1930). When the collector substitutes a different currency from that reported by the appraiser, he is not converting currency as contemplated by the statute but is changing the valuation of the merchandise. This he has no right to do and it was so held when this case was before Judge

Dallinger on reappraisement (*W. X. Huber Co.* v. *United States,* 8 Cust. Ct. 639, Reap. Dec. 5594).

The Government claims, however, that the supplemental duties were demanded prior to appraisement and that the collector was authorized to make such demand under section 505, Tariff Act of 1930, and article 311, Customs Regulations of 1937. It is not clear from the record when these supplemental duties were demanded. At the original hearing William X. Huber testified as follows:

Q. Will you explain to the Court the basis for the assessment of the storage charges—the facts which led up to it?—A. All of the papers concerning the entire matter aren't here. They were in the jacket, and I think Mr. Townsend has the jacket there, but at the time that the blue ticket came to the customhouse, which is what we call the release ticket, there was no advance in value made by the appraiser. It was returned as entered. Mr. Townsend looked at the papers and then said that there would be a demand for some amount—the amount I don't quite recall—and we refused to pay that amount because I couldn't see where there was any advance, and in view of that he refused to deliver the goods. We then filed an action for reappraisement, and that action was finally decided in our favor. Then the goods were released, but we had to pay storage charges for the whole time.

At the rehearing, Mr. Townsend testified that the merchandise was appraised on November 9, 1940, but he could not recall the date on which the demand for supplemental estimated duties was made. Both Mr. Townsend and Mr. Gulick, the appraiser, were asked whether a notice of withheld appraisement had been attached to the invoice and the invoice returned to the collector, but neither could recall whether or not that had been done. However, in the protest, plaintiff makes a claim for storage charges exacted from October 25, 1940, which is prior to the date of appraisement.

Regardless of whether the original demand for supplemental duties was made before or after appraisement, it is clear that it continued after the appraiser had made his return. At that point, the collector either should have appealed to reappraisement, if he disagreed with the appraiser's valuation, or have liquidated the entry on the basis of the appraiser's return. Instead he advanced the valuation by substituting a different currency, thus forcing the importer to appeal to reappraisement. Assuming that the original demand for supplemental duties was made prior to appraisement and therefore in accordance with section 505, nevertheless the continuance of the demand was based on an illegal action of the collector. We do not think the importer should be penalized by having to pay charges for a storage of the merchandise which would not have been necessary save for the unauthorized act of the collector.

Furthermore, plaintiff has called to our attention a Treasury Department letter (T. D. 24894) given as a marginal reference to article 934, Customs Regulations of 1937. It is stated therein:

Where the importer of merchandise regularly invoiced, and of which complete entry has been made, fails to give a special ten-day or general six-months bond for the return of unexamined packages, and the Government is thereby compelled to take possession of all the merchandise, or the whole importation, and store the same in public stores or customs warehouses, no storage is chargeable against the goods pending appraisement proceedings. * * *

After any reappraisement proceedings become final, storage charges will accrue upon failure of the importer to remove the goods at the expiration of two days after notice to remove the same, given on completion of the reappraisement of the merchandise, and the importer will be held liable for the payment thereof, as well as any labor charges that may accrue after the expiration of said period.

We therefore adhere to our original decision holding that the plaintiff is entitled to recover storage charges, but modify the same to the extent that such recovery shall be for the period from the date of appraisement to a date 2 days after notice to remove the goods, given on completion of the reappraisement of the merchan-

dise, or if no such notice was given, the date claimed by the protest, April 21, 1942. Judgment will be entered accordingly.